**FARIBO OIL COMPANY, et al., Appellants,**

v.

**TATGE OIL CO., INC., Respondent,**

**Petroleum Marketers Service, Inc., et al., Respondents.**

No. C5–93–124.

Court of Appeals of Minnesota.

June 22, 1993.

Review Denied Aug. 24, 1993.

George L. May, Langlais, May & Schumacher, P.A., Hastings, for Faribo Oil Co., et al., appellants.

Gary M. Peterson, Gary M. Peterson, P.A., Faribault, for Tatge Oil Co., Inc., respondent.

Richard D. Donohoo, Minneapolis, for Petroleum Marketers Service, Inc., et al., respondents.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and SCHULTZ,* JJ.

## OPINION

CRIPPEN, Judge.

This appeal arises from claims asserted against a seller and a broker. Recovery was denied on claims against the seller, and appellant challenges the imposition of sanctions for pursuing this claim. On a judgment against the broker, appellant and respondent broker dispute the court's calculation of damages.

## FACTS

Willard Tatge retained respondent Petroleum Marketers Service, Inc. (Petroleum), with respondent O.S. Brodd acting as president, to find a buyer for respondent Tatge Oil, a Faribault area business. Brodd had worked in the petroleum business for decades, and was a friend of appellants Michael Wilson and Robert Keilen. Brodd contacted appellants, who expressed interest in Tatge Oil, but were concerned that its sales volume was insufficient for profitable operation. Both Wilson and Keilen also had experience in the oil business, and Wilson owned a fuel distributorship in Red Wing.

Wilson testified that at a 1988 meeting attended by Keilen, Brodd, Tatge and himself, Willard Tatge stated that his company had sales of approximately 800,000 gallons in the past year. Wilson also testified that Tatge explained a market report showing Tatge Oil's sales to be only 500,000 gallons was incomplete, because it did not reflect products bought from certain marketers. However, Keilen testified at trial and Wilson admitted in a deposition that the only specific representation regarding Tatge Oil's volume occurred in an appraisal prepared later by Petroleum. Keilen testified that Willard Tatge never made any misleading or false statements to Wilson or him.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by · appointment pursuant to Minn.Const. art. VI, § 10.

Wilson testified that Brodd told Keilen and him in several meetings that Tatge Oil had a sales volume of 800,000 gallons; but again, this was contradicted by other testimony that the only misrepresentation occurred in Brodd's later appraisal. Brodd acknowledged that an appraisal submitted by Petroleum to Wilson and Keilen incorrectly represented Tatge Oil's sales volume to be 825,000 gallons, and he attributed this mistake to the fact that his son prepared the appraisal. Brodd worked as an agent for Tatge Oil from the time he contacted appellants until they made the purchase. However, out of concern for information regarding past sales volumes, appellants hired Brodd to prepare the appraisal, because they could not find any other reliable information.

Appellants purchased Tatge Oil and Dusbabek Oil, both located in the Faribault area, to generate a sales volume of at least 1,000,000 gallons, which they believed was necessary for a profitable operation. They paid a total of $107,500 for the two businesses, including $65,000 attributable to Tatge Oil assets, and they formed a new entity incorporated under the name Faribo Oil Company. But several months after taking over operations, appellants noticed that the sales volumes were lower than expected. They tried to determine the past year's sales through customer lists and other records, but were never able to determine this with any certainty.

Appellants sued Tatge Oil, Petroleum, and Brodd for fraudulent and negligent misrepresentation, breach of contract, and breach of warranty. On respondents' motions for summary judgment, the trial court ruled that appellants had not shown the elements necessary to establish misrepresentation claims against Tatge Oil directly, and that Tatge Oil was liable only if appellants could show that Brodd acted within his authority as Tatge's agent when he made misrepresentations in his appraisal. At trial, the court granted a directed verdict dismissing Tatge Oil at the close of appellants' presentation, reserving consideration of Tatge Oil's claim for attorney fees for subsequent hearing. Later, the court awarded Tatge Oil $12,146 in attorney fees.

The court found Petroleum liable to appellants in the amount of $10,000 for breach of contract. This figure represented the court's approximation of the value of the sales volume stated in the appraisal, but not experienced during appellants' first few years of operation. Appellants claimed damages of over $200,000 for its three and one-half years of operation. Petroleum contended that at most it was liable for $2500, representing the value of lost volume in the first year of operation. Appellants' subsequent motion for a new trial was denied, and they now appeal from the judgment.

## ISSUES

1. Did the trial court abuse its discretion in assessing attorney fees and costs against appellants under Minn.Stat. § 549.21 for pursuing frivolous claims against Tatge Oil?

2. Was the trial court's finding that appellants suffered damages of $10,000 clearly erroneous?

## ANALYSIS

We note initially that appellants dispute the court's decision that there was no merit to the claims against Tatge Oil. They cite testimony of one witness that Willard Tatge made factual representations on volume. The trial court found that this testimony was not credible. More importantly, however, a claim of fraudulent or negligent misrepresentation requires either knowledge that the representation is false, *Davis v. Re–Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967), or failure to exercise reasonable care, *Bonhiver v. Graff*, 311 Minn. 111, 122, 248 N.W.2d 291, 298 (1976).

Appellants insist that their misrepresentation claims have merit if they succeeded in proving misstatements of fact. But appellants produced no evidence showing that Willard Tatge negligently or intentionally misrepresented facts. *See e.g. Spiess v. Brandt*, 230 Minn. 246, 250, 41 N.W.2d 561, 565 (1950) (elements necessary

for fraudulent misrepresentation include knowledge of falsity, intention to induce, and reliance); *Bonhiver*, 311 Minn. at 122, 248 N.W.2d at 298–299 (elements necessary for negligent misrepresentation include reliance and lack of reasonable care).

■ Alternatively, appellants claim that Tatge Oil can be held liable for Brodd's misrepresentations as within the scope of his authority as an agent. Although the trial court had warned appellants their case depended on proof that the appraisal was submitted in the course of Brodd's agency with Tatge Oil, appellants made no such showing. In the words of the trial court,

> Despite the warning, plaintiffs still failed to present evidence at trial to show Brodd acted as Tatge's agent when he performed the appraisal. In fact, plaintiffs' evidence tended to show just the opposite, that Brodd acted as plaintiffs' agent for the appraisal because plaintiffs employed and paid him.

In sum, appellants failed to meet their burden in making a prima facie case of fraudulent or negligent misrepresentation against Tatge Oil.

## 1. Sanctions.

■ An award of attorney fees must be upheld absent an abuse of discretion. *Radloff v. First Am. Nat. Bank of St. Cloud*, 470 N.W.2d 154, 156 (Minn.App. 1991), *pet. for rev. denied* (Minn. July 24, 1991). The trial court awarded attorney fees of $12,146.59 to Tatge Oil, pursuant to Minn.Stat. § 549.21, subd. 2 (1990), which permits such recovery when a party or attorney acts in bad faith, asserts a frivolous claim costly to the other party, asserts an unfounded position, or commits a fraud on the court.

Specifically, the trial court found that appellants' misrepresentation claims against Tatge Oil were frivolous, because they made no showing of any wrongful, false statements. The trial court rested its determination in part on a credibility judgment, since Wilson testified that Willard Tatge stated Tatge Oil's volume to be 800,-000 gallons. This testimony was seriously impeached by Wilson's prior deposition, and flatly contradicted by his partner, Keilen. Still, were sanctions to rest on this ground

alone, there might be error. Three other considerations, however, establish the merit of the award.

First, although the court faulted Wilson's testimony because of its credibility, this was not the only deficiency in appellants' claim. Appellants have utterly failed to show any evidence that the misrepresentations allegedly made by Willard Tatge were either willful or formulated negligently. Second, the trial court warned appellants following summary judgment that any claim against Tatge Oil for misrepresentation would have to be established vicariously, through misrepresentations of Petroleum or Brodd in the appraisal. The only additional evidence produced at trial in this regard indicated that Brodd was hired to perform the appraisal by appellants themselves. Finally, the trial court found that certain evidence presented by appellants in opposition to summary judgment was falsely identified as produced by Tatge Oil, despite being warned of this by opposing counsel.

■ In discussing the application of Rule 11, the supreme court in *Uselman v. Uselman*, 464 N.W.2d 130, 143–145 (Minn.1990), stated that notice is required before imposing sanctions. Because sanctions here were imposed under Minn.Stat. § 549.21, we need not apply the same guidelines as set forth by *Uselman* in the context of Rule 11. Moreover, Minn.Stat. § 549.21 was amended in 1986 to exclude notice language which applied for purposes of the *Uselman* case. *Radloff*, 470 N.W.2d at 159.

■ But in any case, we conclude that in the circumstances here, sanctions were preceded by an appropriate level of warning. The pretrial observations made by the court regarding the necessity to produce evidence of vicarious liability made it evident to the parties that absent such evidence at trial, appellants were pursuing a claim without merit. Without a specific recitation of the danger of sanctions, the court amply informed the claimants that they risked going forward with a frivolous claim. This court's *Radloff* decision makes clear that any notice still required under Minn.Stat. § 549.21 need not be specific. *Id.* (summary judgment order may provide

sufficient notice of sanctions without explicit warning).

### 2. Damages.

 Appellants failed to demonstrate an identifiable, consistent theory on their calculation of damages. The court's award was well within its discretion, and it adequately took into account testimony favoring appellants. Respondent's claim for reduction of damages is plausible, reflecting doubt about the total damages caused by Brodd's misstatements contained in the appraisal. The court's award, however, is not clearly erroneous, and must be affirmed.

### DECISION

The trial court acted within its discretion in awarding fees against appellants, because the claims against Tatge Oil were frivolous, and the trial court's summary judgment memorandum provided sufficient warning of the claims' deficiencies. The $10,000 judgment against Petroleum also falls within the limits of the trial court's discretion.

**Affirmed.**